UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                    CASE NO.

      Plaintiff,

vs.

IRO INC., a Foreign Profit Corporation
D/B/A IRO PARIS

      Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, IRO INC., a foreign profit corporation d/b/a IRO PARIS (hereinafter referred to as "IRO PARIS"), for declaratory and injunctive relief, and damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

1)     This action is also brought pursuant to 28 C.F.R. Part 36.

2)     This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

3)     Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4)     Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5)     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

1

6)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a t-shirt.

7)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)      Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)      Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)      At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby his vision fluctuates from 20/250 to 20/800.

13)      Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)      In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated

websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)     Plaintiff is limited in the performance of major life activities due to his visual disability and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

16)     Plaintiff uses the computer regularly, but due to his visual disability, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist him, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)     "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017)*.

18)     Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)     Defendant, IRO PARIS, is a foreign profit corporation authorized to do business and doing business in the State of Florida.

20)     Defendant, IRO PARIS, is a company that sells men, and women clothing, bags, shoes, and accessories. There is a retail location in Miami-Dade County.

21)     At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "IRO PARIS".  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.iroparis.com/us/home. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing

4

information on its brand and other information that Defendant is interested in communicating to its customers about its physical locations.

24)    Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendant's retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

25)    Plaintiff sought to, seeks to and intends to patronize, in the near future once the Website's access barriers are removed or remedied, one or more of Defendant's physical retail locations, check store hours and product pricing and place online orders. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

26)    Traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience, thus the opportunity to shop and pre-shop Defendant's products, plan his visits, and to compare products, services, prices, sales,

discounts, and promotions are important and necessary accommodations for Plaintiff because Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

27)     During the month of October 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations and with the intent to make a purchase through the website or at one of Defendant's physical stores.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

28)     Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

29)     Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

**IRO Paris**  https://www.iroparis.com/us/home

System settings while doing the review:

Operating system: Windows 11

Browser: Google Chrome v. 129.0.6668.60

Screen Reader: NVDA v. 2024.3.1

Video Recorder: OBS Studio 30.2.3

**Barriers**

Lack of Instructions for Navigation: Users are not provided instructions on how to navigate the Main Navigation Menu using the arrow or tab keys. This creates confusion for keyboard-only users and those relying on assistive technologies.

Keyboard Accessibility Issues: Several submenus in the Main Navigation Menu are not reachable or operable via the keyboard. Additionally, critical features such as the "View Password" button on forms are inaccessible using the keyboard, preventing users from verifying inputs like passwords.

Meaningful Sequence Disruptions: The Main Navigation Menu obstructs parts of modals (e.g., Search Results Modal), allowing users to navigate hidden elements. This breaks the logical sequence of navigation and makes it hard for users to follow the expected flow of interaction.

Missing Descriptions for UI Components: Users are not informed of the name, role, or purpose of critical fields like the "Date of Birth" field. In product pages, the screen reader fails to communicate details such as product information, size, fit, shipping, and return policies, leaving users unable to interact with content effectively.

On-Input Redirects Without Warning: When users interact with controls like the Size Guide link, they are redirected to a new page without any advance warning, leading to a disorienting experience with no clear path to return.

Bypass Mechanisms: Users cannot bypass repeated content (e.g., top navigation menus) to access the main content quickly. The only option provided is a "Skip to Footer" link, forcing users to navigate through repetitive elements.

Focus Order Disruptions: Focus is incorrectly given to elements in the Search Results Modal while parts of the modal are obstructed by the expanded Main Navigation Menu. This results in confusion, as users interact with elements that are not visible or reachable.

Error Identification and Validation Issues: Forms like the Guest Checkout and Returning Customer forms do not provide adequate error messages when invalid inputs (e.g., white space characters in email fields) are detected. Screen readers fail to notify users of these errors, making it difficult to correct issues.

Labels and Instructions Missing in Forms: Required fields such as gender selection (radio buttons), password requirements, and phone number formats are not clearly communicated in forms, leaving users without guidance on how to fill them out accurately.

These barriers significantly hinder the usability and accessibility of the IRO Paris website for users relying on keyboard navigation and assistive technologies.

**Violation 1: 3.3.2 Labels or Instructions**

Labels or instructions are provided when content requires user input.

On the Home page, within the Main Navigation Menu, users are not given instructions on how to use the arrow or tab keys to navigate through the menu. This absence of guidance creates confusion and makes the navigation experience inaccessible for users relying on keyboard input or assistive technologies.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/home

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EW7yPEX6uZtCk7FwujM_SpAB6mjQsdv3tc TSi-lDNEFgXA

**Violation 2: 2.1.1 Keyboard**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

On the Home page, some of the submenus within the Main Navigation Menu are not reachable or operable using the keyboard. This lack of accessibility prevents users relying on keyboard navigation from accessing essential options in the menu, creating a significant barrier to interacting with the site.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/home

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EWD00ApF0_5KsLNUYXToR9UBVIEdr_N

3LxG1_mzHgkOoYg

**Violation 3: 1.3.2 Meaningful Sequence**

When the sequence in which content is presented affects its meaning, a correct reading

sequence can be programmatically determined.

On the Home page, while the Search Results Modal is displayed, the Main Navigation

Menu obstructs part of the modal, and users can still navigate through elements that are

not visible. This disrupts the intended meaningful sequence of navigation and makes it

confusing for users to follow the expected flow of the page, especially those relying on

assistive technologies.

Applicable WCAG 2.1 Standard at Issue: 1.3.2 Meaningful Sequence (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/p/justine-long-dress-WP33JUSTINE24W_KAK01.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EYWMo56axF5ItT8iVV9SI_0BuD-h-

ZBeJkokDRX8IgYgZw

**Violation 4: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and

components generated by scripts), the name and role can be programmatically

determined; states, properties, and values that can be set by the user can be

programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

On the Justine Long Dress product page, when users attempt to select a size, there is no confirmation provided by the screen reader indicating which size has been selected. This lack of feedback makes it difficult for users who rely on assistive technologies to confirm their actions and proceed with confidence in their selection, impacting their ability to complete the purchase process.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/p/justine-long-dress-WP33JUSTINE24W_KAK01.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EflhDMm8JdVHkRzDZw35UHkBcy0pNvr9C 1DrDedVofelEg


**Violation 5: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

On the Justine Long Dress product page, the Description and Details section, which includes important details like Size & Fit and Shipping & Returns, is not communicated by the screen reader. Users relying on assistive technologies are left without crucial information regarding product specifications, fit guidance, and return policies, significantly impacting their ability to interact with the content and complete the purchase process confidently.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Eaw1mEoYIQNAh932rMAE4_4B9_q_AGkH

QKimY_csmH2L9w


**Violation 6: 3.2.2 On Input**

The intent of this Success Criterion is to ensure that entering data or selecting a form
control has predictable effects. Changing the setting of any user interface component is
changing some aspect in the control that will persist when the user is no longer
interacting with it. So checking a checkbox, entering text into a text field, or changing the
selected option in a list control changes its setting, but activating a link or a button does
not. Changes in context can confuse users who do not easily perceive the change or are
easily distracted by changes. Changes of context are appropriate only when it is clear that
such a change will happen in response to the user's action.  Note This Success Criterion
covers changes in context due to changing the setting of a control. Clicking on links or
tabs in a tab control is activating the control, not changing the setting of that control.
Note What is meant by "component" and "user interface component" here is also
sometimes called "user interface element".  Benefits This Success Criterion helps users
with disabilities by making interactive content more predictable. Unexpected changes of
context can be so disorienting for users with visual disabilities or cognitive limitations
that they are unable to use the content. Individuals who are unable to detect changes of
context are less likely to become disoriented while navigating a site. For example:

Individuals who are blind or have low vision may have difficulty knowing when a visual context change has occurred, such as a new window popping up. In this case, warning users of context changes in advance minimizes confusion when the user discovers that the back button no longer behaves as expected. Some individuals with low vision, with reading and intellectual disabilities, and others who have difficulty interpreting visual cues may benefit from additional cues in order to detect changes of context.

On the Justine Long Dress product page, when users interact with the Size Guide link, they are not informed in advance that they will be redirected to a new page. This lack of feedback creates a disorienting experience for users, particularly those with visual or cognitive impairments, as they are taken away from the current context without a clear path to return to the original page. This unexpected change of context violates the requirement for predictable interaction.

Applicable WCAG 2.1 Standard at Issue: 3.2.2 On Input (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/p/justine-long-dress-WP33JUSTINE24W_KAK01.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETxPxux2B_xLtLT-

PlPCYiYBzC3QWLdmi_AtQ6Jp8pH3oQ

**Violation 7: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be

programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

On the Justine Long Dress product page, the screen reader does not communicate the title or purpose of the Newsletter form. This prevents users from understanding the role of each element they interact with, making it impossible to fill out the form correctly. Without clear identification of the form and its fields, users, especially those relying on assistive technologies, cannot infer the form's purpose or the required input.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/p/justine-long-dress-WP33JUSTINE24W_KAK01.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETynfF5NfMBPlR2wpAzASCAB44q5hWwn
GXfiCENvaNVLyg


**Violation 8: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web pages

On the Justine Long Dress product page, there is no bypass mechanism that allows users to skip over the Newsletter form or the footer sections and quickly return to the main content of the page. This forces users, especially those using assistive technologies or keyboard navigation, to navigate through all the repetitive elements before accessing the main content.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/p/justine-long-dress-WP33JUSTINE24W_KAK01.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EY7NNbyMvyBNg2jefrnAJ44BVs_21erfv5o R242FvBqzjw

### Violation 9: 3.3.1 Error Identification

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

On the Checkout Begin page, within the Guest Checkout Form, the screen reader fails to inform users that a white space character (WSC) is present in the email field. Additionally, when an error message is displayed, it does not specify the issue with the white space character, preventing users from knowing the reason for the invalid email input. This lack of clear error messaging impedes the user's ability to correct the issue, especially for those relying on assistive technologies.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/checkout-begin?stage=customer#customer

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ERCZlvgrITtAjmH7vfZSpU8BwdhLOCPopq hykCM0y92cbA

### Violation 10: 3.3.1 Error Identification

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

On the Checkout Begin page, within the Returning Customer Form, there is no error message to inform users of the presence of a white space character (WSC) in the email field. This lack of specific feedback prevents users from identifying the problem and correcting their input. For users relying on assistive technologies, the absence of clear error messaging makes it difficult to proceed with the login process.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/checkout-begin?stage=customer#customer

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EVNPLju5F0hFqtgZz7udPvAB4AFalQizlBHr Jb_8TlRvsg


**Violation 11: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

On the Checkout Begin page, within the Returning Customer Form, the "View Password" button cannot be accessed or operated using a keyboard. This creates a barrier for keyboard-only users, preventing them from verifying the password they entered. The inability to review their password poses a challenge for users trying to ensure the accuracy of their input, potentially leading to login errors or form submission failures.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/checkout-begin?stage=customer#customer

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EcQsf34O8i5BpQqB5O3LLcQBCTIeJDWmu

z7yO7TkhXuScA


Violation 12: 3.3.2 Labels or Instructions

Labels or instructions are provided when content requires user input.

On the Register page, within the Create Account Form, users are not informed that selecting the Women or Men radio button is required. The screen reader does not convey the password minimum requirements or the correct phone number string format, making it difficult for users to fill out the form accurately and complete the registration process.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/login?action=register

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EQaP10TMitRAnxGdBXpqEHIBJdIkKcAMa

Jjk1PHCtQMGwQ


**Violation 13: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

On the Register page, within the Create Account Form, the screen reader cannot identify invalid characters or detect the presence of white space characters in the email field when reading back the entered text. As a result, users relying on assistive technologies are unaware of these input errors, leading to potential form submission failures without proper feedback.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/login?action=register

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EVlRIy7vl-RCuAniCT5W5qoB75VbaaSe6yAomaiFYuqZHw

**Violation 14: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

On the Register page, within the Create Account Form, users relying on keyboard navigation cannot reach or operate the "View Password" button. This limits their ability to verify the password they have entered, which is crucial for preventing errors in password input, especially for users relying solely on keyboard navigation or assistive technologies.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/login?action=register

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EecMPF2wKBhAp7dGNPO-

jjMBdDH7N3M2GHGk2LWVJSK4tQ

**Violation 15: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and

components generated by scripts), the name and role can be programmatically

determined; states, properties, and values that can be set by the user can be

programmatically set; and notification of changes to these items is available to user

agents, including assistive technologies.

On the Register page, within the Create Account Form, the screen reader does not inform

users of the name or purpose of the "Date of Birth" field. This creates confusion for users

relying on assistive technologies, as they cannot understand which information they are

supposed to provide or how to correctly format the date input.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/login?action=register

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EWHcJ384CgpKgqoBZyu56ggB5LJaKn89ar

w155rKLC6iFQ

**Violation 16: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

On the Home page, while the Main Navigation Menu is expanded, it obstructs the Search Results Modal, but focus is still directed to elements within the modal that are not visible. This creates a confusing navigation experience, especially for users relying on keyboard navigation, as they interact with elements they cannot see or reach easily.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/home

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EcWdr50A4sdMlS81a3aKZcsBQ43xgaRmWt qz8jtB2sOQbw


**Violation 17: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web pages

On the Justine Long Dress page, within the Create Account form, there is no mechanism provided to skip past the top navigation menus and search bar to access the main content. The only "Skip to Footer" option is available, forcing users, particularly those relying on keyboard navigation or assistive technologies, to manually navigate through the repetitive top elements. This omission hinders efficient navigation and accessibility.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://www.iroparis.com/us/p/justine-long-dress-WP33JUSTINE24W_KAK01.html

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ee9xdCgoqthGrhjHimARihoB5xw2NGXVAv

NIceP47hD0Hg

30)     Although the Website appeared to have an "accessibility" statement displayed and an

"accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested,

still could not be effectively accessed by, and continued to be a barrier to, blind and visually

disabled persons, including Plaintiff as a completely blind person. Plaintiff, although he attempted

to access the statement, thus, was unable to receive any meaningful or prompt assistance through

the "accessibility" statement and the widget/plugin to enable him to quickly, fully, and effectively

navigate the Website.

31)     The fact that Plaintiff could not communicate with or within the Website left him feeling

excluded, as he is unable to participate in the same shopping experience, with the same access to

the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical

locations as the non-visually disabled public.

32)     Plaintiff desires and intends, in the near future once the Website's access barriers are

removed or remedied, to patronize one or more of Defendant's physical stores and to use the

Website, but he is presently unable to do so as he is unable to effectively communicate with

Defendant, due to his severe visual disability and the Website's access barriers. Alternatively, as

a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and

communicate with Defendant through the Website due to his severe visual disability and the

Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual

disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

33)     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

34)     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

35)     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

36)     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

37)     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

38)     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

39)     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

40)     Defendant has not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

41)     Defendant has not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

42)     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

43)     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's products offered on the Website and in the physical stores from their homes.

44)     Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

45)     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

46)     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

47)     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

48)     Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

49)     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

50)     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

51)     Notice to Defendant is not required because of Defendant's failure to cure the violations.

52)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

53)     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

54)     Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

55)     Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56)     Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations, purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's brand and available products merchandise sold through the Website and in the physical stores.

57)     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58)     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59)     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60)     The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61)     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

62)     The Website was subsequently visited by Plaintiff's expert in October and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Mario Saavedra, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63)     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64)     There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

65)     Defendant has violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

66)     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

67)     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R.§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68)     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69)     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70)     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71)     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

72)     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73)     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

   i.     Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

   ii.    Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period

prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.     Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's stores and becoming informed of and purchasing Defendant's products, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

74)     WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

a.     A declaration that Defendant's website is in violation of the ADA;

b.     An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

c.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1]would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to

---



conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.      An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.

**COUNT II – TRESPASS**

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

75)     Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

76)     Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

77)     The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on his computer.

78)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

79)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

80)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

PRIVACY POLICY

This website is operated by IRO inc. IRO understands the importance of protecting your personal information. We have created strict policies and security measures to protect the information that you give us. When you register online or submit your personal information while visiting an IRO boutique you give us your consent to use this personal

data in accordance with this privacy policy. The privacy policy applies to all personal information collected and used by IRO inc. Acceptance of Privacy Policy

By visiting the IRO website or giving us your personal information at an IRO boutique you consent to our collection and use of your information as described in our privacy policy. IRO maintains the right to make changes to its privacy policy. Any changes that are made will be updated on this page for your review.

What information about me is collected and stored?

IRO collects and stores information that you enter when you visit our website or that you provide to our boutiques. IRO also tracks ip addresses and uses "cookies" that we use to improve your experience with us. Personal information collected is used to provide the products and services that you have ordered or requested, to process and ship orders, to send order and shipping confirmations and to provide customer service. This information also may be used for our own marketing and internal business purposes, and to contact you about sales and special offers.

Does IRO share my personal information?

IRO does not share, sell or rent or disclose, any personal information that you provide to us through this Web site or through our stores. We engage third parties to perform services in connection with the operation of our business. Third parties are authorized to use this information only in connection with the services performed on behalf of IRO. We do not otherwise share your information with third parties unless required to by law or in connection with a legal proceeding.

Do you keep my information secure?

We use security measures, including Secure Socket Layer (SSL) encryption to protect your personal information. Although we take all precautions to protect your information no internet data transmission can be guaranteed to be secure from access by unintended recipients. IRO does not hold responsibility for any breach of security not caused by negligence on our behalf.

How can I update my account information?

You can access, correct and update certain personal information that you have provided to us by clicking on "Update Account" within the "My Account" area of this Web site.

Legal purchase Age

We require parent or guardians consent for any purchases made at iroparis.com by customers under the age on eighteen (18). We do not collect personal information for anyone under the age of thirteen (13). If you are under the age of thirteen, please ask your parent or guardian to register on your behalf.


COOKIES

A cookie enables users to be identified and makes it possible for their consultation of the www.iroparis.com website to be customized. It also enables website pages to be downloaded more rapidly to their computer thanks to the downloading of a file to their computer.

The user acknowledges having been informed of this practice, namely the use of cookies, and authorizes IRO to that effect. Unless legally required to do so, IRO undertakes never to communicate the content of these cookies to third parties, partner companies or client companies. Any user may refuse to agree to the saving of these cookies, or may

alternatively configure their search engine in advance with a view to being notified of any cookies that a website is attempting to install.

© IRO inc.

All reproduction and display rights reserved. Our site and all its elements; such as photos and texts, are protected on the score of intellectual property rights. It is forbidden for anyone whatsoever to modify, copy, disseminate, transmit, display, publish, sell and/or exploit all or part of the figurative, text or audio elements featured on our website on any medium whatsoever, as likewise to create works derived from all or part of the above-mentioned elements, without IRO's express written permission.

81)     Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his computer.  Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

82)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630

35

Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434